**MORTON BUILDINGS, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9812–TA–187.

Tax Court of Indiana.

Dec. 13, 2004.

Larry J. Stroble, Barnes & Thornburg, Indianapolis, IN, Abraham M. Stanger, Sarah E. Williams, Attorneys at Law, New York, NY, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, David A. Arthur, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Morton Buildings, Inc. (Morton) appeals the final determination[1] of the Indiana Department of State Revenue (Department) denying its claim for refund of use

---

1. Morton filed two claims for refund with the Department and received no response to either claim. (Second Am. Pet. for Refund of Use Taxes at 3; First Stipulation of Facts at 2–3.) Accordingly, both claims were deemed denied. *See Ziegler v. Indiana Dep't of State Revenue,* 797 N.E.2d 881, 884 n. 2 (Ind. Tax Ct.2003). For ease of reference throughout this opinion, the Court will refer to that denial as the Department's "final determination."

taxes it paid from January 1, 1993 through September 30, 1998 (the period at issue). The issue for this Court to decide is whether the raw materials Morton purchased and used out of state to make building components, that were eventually assembled into prefabricated buildings in Indiana, are subject to Indiana use tax.

## FACTS

Morton, an Illinois corporation licensed to do business in Indiana, is engaged in the production, sale, and on-site erection of prefabricated timber-frame, metal-sheathed warehouses and other buildings for agricultural and industrial use. Morton maintains no factories in Indiana, only sales offices. At the time this appeal was filed, Morton actively conducted business in approximately 40 states.

Morton purchases the raw materials used in its business in bulk from vendors outside Indiana and stores them in its warehouses which are also located outside Indiana. The principal materials include, among other things, steel and lumber. These materials are not purchased by Morton for application to any particular customer order, but rather are purchased on the basis of factory-by-factory projections. The materials are kept in inventory until they are needed for a particular order.

When Morton receives an order from a customer, the necessary materials are withdrawn from storage and are fabricated into finished building components and hardware in accordance with the customer's specifications.[2] These building components include trusses, lower columns, upper columns, purlins, metal panels, and overhang rafters. Production of these components takes place entirely outside of Indiana. After production is complete, the building components are transported by Morton to the building site in Indiana. All of the loading, unloading, transportation, and erection of the building is performed by Morton's employees or, in certain circumstances, by subcontractors hired by Morton. Generally, it takes Morton's crew less than one week to complete the erection of a building.

Morton's customers own the real estate on which the buildings are erected. The erection of a building by Morton constitutes an improvement to real property for purposes of Indiana sales and use tax. The contract between Morton and its customers provides for Morton to deliver, erect and affix a completed building in finished condition to the customer's building site at a lump sum price specified in the contract. Title does not pass until the building is completed by Morton and turned over to the customer.

## PROCEDURAL HISTORY

During the period at issue, Morton filed monthly Indiana Sales and Use Tax Returns with the Department and paid all use taxes to the Department in conjunction with each return. On December 13, 1995, Morton filed a claim for refund with the Department (the First Claim) requesting a refund of a portion of the use taxes paid on raw materials from January 1, 1993 through October 31, 1995 (the First Tax Period). On October 29, 1998, Morton filed another claim for refund with the Department (the Second Claim) requesting a refund of a portion of the use taxes paid on raw materials from November 1, 1995 through September 30, 1998 (the Second

---

**2.** The overall style of the buildings made by Morton is uniform, but various features such as doors, windows and skylights may be specially ordered and the dimensions of the building itself may be varied to suit the purchaser's needs.

Tax Period). Morton received no response to either of these claims.

On December 10, 1998, Morton initiated an original tax appeal contesting the Department's failure to refund the First Claim.[3] On May 18, 2001, the parties filed a Stipulation of Facts with the Court and requested that in lieu of a trial, the case be decided on the record. The Court heard the parties' oral arguments on October 24, 2001. Additional facts will be provided as necessary.

## STANDARD OF REVIEW

■ This Court reviews final determinations of the Department *de novo*. IND. CODE ANN. § 6–8.1–5–1(h) (West 2004). Accordingly, it is bound by neither the evidence nor the issues presented at the administrative level. *Snyder. v. Indiana Dep't of State Revenue*, 723 N.E.2d 487, 488 (Ind. Tax Ct.2000), *review denied.*

## DISCUSSION AND ANALYSIS

■ The use tax is "[a]n excise tax ... imposed on the storage, use, or consumption of tangible personal property in Indiana if the property was acquired in a retail transaction, regardless of the location of that transaction or of the retail merchant making that transaction." IND. CODE ANN. § 6–2.5–3–2 (West 1993). Indiana's use tax is complementary to its sales tax. *See* IND.CODE ANN. § 6–2.5–3–4 (West 1993). This complementary formulation exists to ensure that the Indiana sales tax may not be avoided by purchasing products in states where there is no sales tax or where there is a lower sales tax. *See USAir, Inc. v. Indiana Dep't of State Revenue*, 623 N.E.2d 466, 469 (Ind. Tax Ct.1993); Walter Hellerstein and Jerome R. Hellerstein, *State Taxation* v. 2, 16.01[2] (2000). Accordingly, the use tax

bites where the sales tax does not. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 43 Mass.App.Ct. 441, 683 N.E.2d 720, 722 (1997).

■ Morton does not claim an exemption from the use tax; rather, it claims that the use tax imposition statute, by its own terms, does not apply to Morton's activity. Consequently, the issue before the Court is one of statutory interpretation. Because Indiana Code § 6–2.5–3–2 is a tax imposition statute, it is to be strictly construed against the taxing authority, with any ambiguity resolved against the state and in favor of the taxpayer. *See State Bd. of Tax Comm'rs v. Jewell Grain Co.*, 556 N.E.2d 920, 921 (Ind.1990); *Mynsberge v. Indiana Dep't of State Revenue*, 716 N.E.2d 629, 633 (Ind. Tax Ct.1999).

Section 6–2.5–3–2 establishes two conditions for the imposition of use tax on tangible personal property:

1. The "tangible personal property" at issue must be "stor[ed], use[d], or consum[ed] in Indiana;" and

2. The "tangible personal property" at issue must have been "acquired in a retail transaction."

*See* A.I.C. § 6–2.5–3–2. Morton argues that neither of these conditions have been met with respect to the materials used to manufacture its buildings. More specifically, Morton contends that the raw materials it acquired in a retail transaction were used in Morton's factories entirely outside of Indiana to fabricate building components. Further, the materials Morton did use in Indiana—the building components—were not acquired in a retail transaction; rather, they were fabricated by Morton and have an identity separate

---

**3.** On April 4, 2001, Morton filed an amended petition to which it added its claims regarding the Department's failure to refund the Second Claim.

and distinct from the raw materials used to make them. Therefore, Morton argues, the Department cannot tax the raw materials because they were not used in Indiana and it cannot tax the building components because they were not purchased in a retail transaction.

The Department counters, however, that Morton has made a false distinction between the raw materials and the building components. Under the Department's theory, the raw materials do not lose their identity when they are assembled into building components. Accordingly, the Department argues that when the building components are used in Indiana to erect a building, the raw materials are also being used in Indiana and are therefore subject to the use tax.

Although this is an issue of first impression in Indiana, a number of other jurisdictions have addressed this same question under use tax statutes analogous to Indiana Code § 6–2.5–3–2. A majority of those jurisdictions have found in Morton's favor, holding that the use tax does not apply to the raw materials because they are not used in the taxing state, nor does it apply to the building components, because they are not acquired in a retail transaction.[4] Although these holdings are by no means binding on this Court, their logic is both instructive and persuasive. *See USAir, Inc.*, 623 N.E.2d at 469 n. 4.

Manufacturing, by its very nature, results in raw materials losing their identity and becoming part of a new item of tangible personal property. Although this is not an exemption case, the following exemption regulation is instructive in showing what effect manufacturing (or fabrication, the term used in the Stipulation of Facts) has on tangible personal property:

'Direct production, manufacture, fabrication, assembly, or finishing of tangible personal property' is performance as a business of an integrated series of operations which places tangible personal property in a form, composition, or character different from that in which it was acquired. The change in form, composition, or character must be a substantial change, and it must result in a transformation of property into a different product having a distinctive name, character, and use. Operations such as compounding, fabricating, or assembling are illustrative of the types of operations which may qualify under this definition.

IND. ADMIN. CODE tit. 45, r. 2.2–5–8(k) (1992) (1996). *See also Mid–America Energy Res., Inc. v. Indiana Dep't of State Revenue*, 681 N.E.2d 259, 263 (Ind. Tax Ct.1997) (finding that the taxpayer was engaged in the direct production of other

4. *See Morton Bldgs., Inc. v. Bannon*, 222 Conn. 49, 607 A.2d 424 (1992); *Morton Bldgs., Inc. v. Comm'r of Revenue*, 43 Mass. App.Ct. 441, 683 N.E.2d 720 (1997); *Morton Bldgs., Inc. v. Chu*, 126 A.D.2d 828, 510 N.Y.S.2d 320 (N.Y.App.Div.1987), *aff'd*, 70 N.Y.2d 725, 519 N.Y.S.2d 643, 513 N.E.2d 1304 (1987); *Sharp v. Morton Bldgs., Inc.*, 953 S.W.2d 300 (Tex.App.1997); *In re Morton Bldgs., Inc.*, Final Determination (DD–554) of the Executive Director, Department of Revenue, State of Colorado (Jan. 7, 1999); *Morton Bldgs., Inc. v. Director of Revenue*, No. 88–001879RZ, 1989 WL 153531 (Mo.Admin.Hrg.Com. Dec. 8, 1989); *Morton Bldgs.,*

*Inc. v. Wisconsin Dep't of Revenue*, No. 89–S–438, 1991 WL 155249 (Wis.Tax.App.Com. July 26, 1991), *aff'd*, No. 91–CV–3124 (Wis. Dane County Cir. Ct. Feb. 10, 1992). *But see Morton Bldgs., Inc. v. Revenue Cabinet*, No.2002–CA–001787–MR, 2003 WL 21714920 (Ky.Ct.App. July 25, 2003), *review denied; Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254 (Minn.1992); *Morton Bldgs., Inc. v. Vermont Dep't of Taxes*, 167 Vt. 371, 705 A.2d 1384 (1997) (all holding that Morton was required to pay use tax on the raw materials because those materials are used in the taxing state in the form of building components).

tangible personal property for purposes of the equipment exemption where the taxpayer's production process "create[d] a significant change in the properties" of the raw materials and where the tangible personal property produced "ha[d] utility and properties that the [raw materials] previously lacked"), *review denied.*

The Stipulation of Facts reveals that the raw materials go through an extensive production process in Morton's out-of-state factories before they are brought into Indiana as building components. The materials are processed through Morton's machinery, cut to size, and affixed to other materials. For example:

> To fabricate the Trusses, the upper chords and lower chords that will form the Truss are run through a machine which cuts the chords to the proper lengths and to the proper angles at both ends of each chord. Lumber webbing, which is attached between the upper and lower chords, is also cut to length and to correct angles. The Trusses (chords and webs) are then transferred to a fixture table where they are positioned "face-up" and metal gusset plates, themselves fabricated by Morton from rolled steel that it purchases, are positioned at each joint. The gusset plates are then stitched into position with a pneumatic gun nailer. The Truss is then repositioned "face-down" and additional metal gusset plates are positioned onto the joints on that side of the Truss. The Truss is then positioned onto a conveyor and transported through a roller press machine. The roller press machine imbeds the metal gusset plates into the wooden chords and webs at the preselected positions.

(First Stipulation of Facts at 5.) The result of this process is a building component that has an entirely different appearance, character, and utility than the raw materials used to fabricate it. In other words, the raw materials are consumed in the out-of-state production process. What remains are the building components, which are not taxable when used in Indiana because they were not acquired in a retail transaction.

The Department's theory, in effect, asks the Court to find that raw materials retain their original identity and character up until the moment the finished product is completed. However, such a holding would fail to appreciate the gradual transformation that raw materials undergo throughout the entire manufacturing process. It is not necessary for this Court to define the precise point during that process at which raw materials lose their original identity; this question must be decided on a case-by-case basis. The raw materials at issue in this case underwent a substantial transformation when they were fabricated into building components at Morton's out-of-state factories. That transformation is sufficient to render the building components different from the raw materials used to fabricate them. Accordingly, no use tax can be imposed on either the raw materials or the building components.

It is true, as the Department argues, that Morton has simply exposed and taken advantage of a loophole in the use tax imposition statute. (*See* Resp't Br. at 4, 12.) In addition, the Court recognizes that this holding gives an advantage to companies doing business like Morton. However, it is for the legislature, not this Court, to correct the loophole in the statute.[5] *See*

5. Indeed, legislatures in a number of states have amended their use tax statutes in order to close the loophole exposed by Morton.

*See, e.g.,* N.Y. Tax Law § 1110(a) (McKinney 1987) (amended 1989); Conn. Gen.Stat. Ann. § 12–411(1) (West 1992) (amended 1992);

*Weger v. Lawrence,* 575 N.E.2d 659, 663 (Ind.Ct.App.1991), *review denied. See also Indiana Dep't of State Revenue v. Endress & Hauser, Inc.,* 404 N.E.2d 1173, 1178 (Ind.Ct.App.1980) ("[L]egislatures make the tax statutes and courts enforce them as written, not as departments of revenue may wish they had been written").

### CONCLUSION

The raw materials Morton purchased at retail were consumed in the out-of-state production process and, therefore, never used in Indiana. Furthermore, the materials that were used in Indiana—the building components—were not acquired at retail but were instead fabricated by Morton. Accordingly, Indiana Code § 6–2.5–3–2 does not apply and Morton is not subject to the use tax. The Department's final determination is, therefore, REVERSED and the Department is ordered to refund Morton the use taxes paid during the period at issue.

---

Wis. Stat. Ann. § 77.53(1) (West 1991) (amended 1993); Mass. Gen. Laws Ann. ch. 641, § 2 (West 1997) (amended 2004); Minn.Stat. Ann. § 297A.14 (West 1990) (amended 1992). The same remedy is available to our legislature.