AMERITECH PUBLISHING,
INC., Petitioner,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T10–0805–TA–29.

Tax Court of Indiana.

Nov. 16, 2009.

Larry J. Stroble, Randal J. Kaltenmark, Ziaaddin Mollabashy, Barnes & Thornburg, LLP, Indianapolis, IN, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Andrew W. Swain, Chief Counsel, Tax Section, John D. Snethen, Section Chief, Tax Section, Timothy A. Schultz, Nancy M. Hauptman, Deputy Attorneys General, Indianapolis, IN, for Attorneys for Respondent.

ORDER ON PARTIES' CROSS–
MOTIONS FOR SUMMARY
JUDGMENT

FISHER, J.

Three years ago, this Court issued an unpublished decision in which it held that, during a portion of the 1998 through 2003 tax years, Ameritech Publishing, Inc.'s (API) out-of-state purchases of paper and printing services and its in-state use of telephone directories were not subject to Indiana use tax. (*See* Jt. Stip. Facts ¶ 5, Ex. D (hereinafter, "*Ameritech Publ'g, Inc. v. Indiana Dept. of State Revenue (API I)*, No. 49T10–0305–TA–26, slip op., 855 N.E.2d 1096 (Ind. Tax Ct. Oct. 19,

2006), *review denied*"[1]).) Consequently, the Court ordered the Indiana Department of State Revenue (Department) to refund over $2.5 million to API. (*See API I*, slip op. at 5 n. 6, 14.)

While that action was pending, API timely filed another claim with the Department requesting a refund of $1,320,374.57 for use tax paid on its purchases of paper and printing services from the October 1, 2003 through the December 31, 2005 calendar years (the years at issue). On April 7, 2008, nearly a year and half after the issuance of *API I*, the Department denied API's claim because it believed that API "might have [ ] mischaracterized [several facts and transactions with respect to its] previous refund claim." (*See* Jt. Stip. Facts ¶ 8, Ex. F at 3.)

On May 5, 2008, API timely filed an original tax appeal challenging that final determination. The matter, currently before the Court on the parties' cross-motions for summary judgment, presents one issue for review: Whether API's use of its telephone directories in Indiana was subject to Indiana's use tax during the years at issue.[2] (*See* Resp't Br. Mot. Summ. J. (hereinafter, "Resp't Br.") at 1; Pet'r Resp. Resp't Br. (hereinafter, "Pet'r Br.") at 1 (footnote added).)

### FACTS[3]

During the years at issue, API published Yellow Pages and White Pages (telephone directories) and then distributed them to business and residential customers in several states, including Indiana. API's publication process is essentially comprised of four components: 1) content development; 2) paper procurement; 3) printing; and 4) directory distribution.

API engaged RR. Donnelley & Sons (RR Donnelley), a Chicago-based commercial printer, to perform all lineup, plate-making, presswork, and binding of its telephone directories during the years at issue. (*See API I*, slip op. at 4 (citation omitted).) RR Donnelley completed its work for API at its plant in Dwight, Illinois.

API supplied both the paper and the content for the directories. RR Donnelley invoiced API for printing services, i.e., photocomposition, presswork, binding, and packing. The invoices also separately stated RR Donnelley's charges for the glue, shrinkwrap, and ink it used in printing the telephone directories. Finally, the invoices also separately stated the cost, in addition to the 4.04% paper management fee, of any paper RR Donnelley purchased on behalf of API.

### STANDARD OF REVIEW

Summary judgment is proper only when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment

1. For ease of reference, a copy of the *API I* decision is also available at http://www.in.g ov/judiciary/opinions/pdf/10190601tgf.pdf.

2. The Department filed its motion for summary judgment on March 31, 2009; API filed a cross-motion for summary judgment on May 15, 2009. The Court held a hearing on the parties' motions on September 28, 2009.

3. The parties have filed a joint stipulation of facts in which they designated the trial transcript and the first and supplemental joint stipulations of fact (and all exhibits attached thereto) from the *API I* case (hereinafter, the "API I Record"). (*See* Jt. Stip. Facts ¶¶ 1–4.) The parties agreed that the API I Record should serve as the "factual evidence relevant to the Court's determination in this action[.]" (*See* Jt. Stip. Facts ¶ 10.) Rather than restating the entire fact section of the *API I* case, as there is no dispute as to these material facts, the Court will only provide a brief recitation of the facts most relevant to the disposition of this case.

as a matter of law. Ind. Trial Rule 56(C). Cross-motions for summary judgment do not alter this standard. *Allied Collection Serv., Inc. v. Indiana Dep't of State Revenue*, 899 N.E.2d 69, 71 (Ind. Tax Ct.2008) (citation omitted).

## ANALYSIS AND ORDER

Indiana imposes an excise tax, known as the use tax, on tangible personal property that is stored, used, or consumed "in Indiana if the property was acquired in a retail transaction, regardless of the location of that transaction or of the retail merchant making that transaction."[4] IND.CODE ANN. § 6–2.5–3–2 (West 2003) (amended 2006) (footnote added). "The person who uses, stores, or consumes the tangible personal property acquired in a retail transaction is personally liable for the use tax." IND.CODE ANN. § 6–2.5–3–6(b) (West 2003).

In *API I*, this Court held that API's purchases of paper and printing services and its use of telephone directories were not subject to Indiana use tax. More specifically, the Court explained that API was not subject to use tax because: 1) while API acquired the paper at retail, it was consumed entirely in the out-of-state production process and, therefore, never used in Indiana; 2) API did not acquire tangible personal property when it purchased printing services; and 3) while API used its telephone directories in Indiana, it did not acquire them in a retail transaction. (*See API I*, slip op. at 12–13.)

Now, in this appeal, the Department claims that its "new arguments . . . involv[ing] no fewer than thirty (30) statutes, regulations, and Information Bulletins which were not discussed or mentioned in *API I* " entitles it to judgment as a matter of law. (Resp't Reply Br. at 2.) More specifically, the Department presents three arguments in support of its motion: first, the factual distinctions between this case and the case of *Morton Buildings, Inc. v. Indiana Department of State Revenue*, 819 N.E.2d 913 (Ind. Tax Ct.2004), *review denied*, render the later inapplicable; second, that RR Donnelley must be understood to be a manufacturer/commercial printer and not just a service provider; and finally, that as a commercial printer, RR Donnelley necessarily acquires[5] tangible personal property (such as paper, ink, and glue) in order to resell that property to its customers in the form of printed materials (here, telephone directories). (*See, e.g.,* Resp't Br. at 6–8, 10–16; Resp't Reply Br. at 3–9, 10–12.) API, on the other hand, maintains that it, and not the Department, is entitled to judgment as a matter of law because the material facts are not in dispute, the controlling statutes and relevant case law have not changed, and the Department's arguments are, for the most part, the same as those resolved in *API I*. (*See* Pet'r Br. at 9–20; Hr'g Tr. at 20–21, 30–31.) API is correct.

---

4. A "retail transaction" is "a transaction of a retail merchant that constitutes selling at retail as described in IC 6–2.5–4–1[.]" IND.CODE ANN. § 6–2.5–1–2(a) (West 2003). In turn, Indiana Code § 6–2.5–4–1 provides that "[a] person is engaged in selling at retail when, in the ordinary course of his regularly conducted trade or business, he: (1) acquires tangible personal property for the purpose of resale; and (2) transfers that property to another person for consideration." IND.CODE ANN. § 6–2.5–4–1(b) (West 2003).

5. The Department stresses that within this context, "acquiring for the purpose of resale" only requires "having possession of a property with the intent to resell" it; ownership of the property is not a prerequisite. (*See* Resp't Br. at 10–12; Hr'g Tr. at 10–11.) The Court, however, need not address this secondary argument, as it is based on an unsound premise in the first instance. *See infra* at pp. 8–10.

The Department essentially asserts that the Court cannot rely upon *Morton* for the following six reasons:

1. In *Morton*, the taxpayer and the manufacturer were the same entity. Here, the taxpayer (API) and the manufacturer (RR Donnelley) are distinct entities. "Thus, it is [RR Donnelley] that is similarly situated to the *Morton* taxpayer, not [API]. The Department is not trying [to] exact tax from" RR Donnelley;

2. RR Donnelley, like the taxpayer in *Morton*, is a manufacturer. "[API], however, tries to cast [RR Donnelley] in the role of a service provider. [API's] own argument is incongruous with the facts in *Morton* [;]"

3. In *Morton*, only one person was involved in the acquisition and transformation of the raw materials: the taxpayer. In this case, there are two people involved: RR Donnelley and API. "There is not a *Morton* case here unless [API] both purchases raw materials and transforms the raw materials itself into directories without the help of [RR Donnelley]. The presence of two independent actors in this case introduces a material complexity not present in *Morton*, because a retail sale happens when one person ( [RR Donnelley] ) acquires raw materials (paper, ink, and glue) and transfers it to another person ( [API] ) for consideration[;]"

4. The final products in *Morton*, manufactured homes, were specifically exempted from use tax; in this case, however, the final products, tele-

phone directories, have not been specifically exempted from use tax;

5. In this case, the Department is not attempting to tax the purchase of raw materials like it did in *Morton*. "Instead, [API] has remitted use tax on its use of directories in Indiana[;]" and

6. Because *Morton* does not address whether raw materials that were transformed into different products may be taxed pursuant to Indiana Code § 6–2.5–4–1(c)(1), it does not control the outcome of this matter.

(*See* Resp't Br. at 17–18 (footnote omitted); Resp't Reply Br. at 10–12.) The Department's reasons, however, are simply not on point.

 At the outset, the Court addressed the relevance of the Department's first, second, and third reasons in *API I*; the Court therefore will not address them again.[6] (*See API I*, slip op. at 8–13 (footnote added).) The Department's fourth reason is deficient because, on the one hand, it misconstrues the facts in *Morton* and, on the other hand, it fails to fully explain the relevance of the Department's position. More specifically, and contrary to the Department's claim, the final products in *Morton* were "prefabricated timber-frame, metal-sheathed warehouses and other buildings [used] for agricultural and industrial" purposes, not manufactured homes. *See Morton Bldgs., Inc. v. Indiana Dep't of State Revenue*, 819 N.E.2d 913, 914 (Ind. Tax Ct.2004), *review denied*. More importantly, however, the Department has offered no cogent argument as to why the fact that the products differed is relevant; instead, it merely

---

**6.** Assuming *arguendo* that RR Donnelley is a manufacturer, that fact actually highlights the factual similarities between the cases. Nevertheless, and as will be explained, RR Donnelley's status as a manufacturer has no bearing upon the central issue in this case (i.e., whether the material facts demonstrate that the transactions between API and RR Donnelley constituted selling at retail). *See infra* pp. 8–10.

states the obvious: that Indiana Code § 6–2.5–5–31 does not exempt telephone directories from sales/use tax.[7] When the legislature has not specifically exempted property from taxation, the taxability of that property does not turn upon its mere existence; rather, it turns upon the occurrence of some event, which in this case is the selling of that property at retail. *See* IND. CODE ANN. § 6–2.5–4–1(a) (West 2003). *See also, e.g., Enhanced Telecomms. Corp. v. Indiana Dep't of State Revenue,* No. 49T10–0801–TA–1, slip op. at 14–15 (Ind. Tax Ct. Nov. 5, 2009) (stating that "the imposition of each and every tax is limited by a statutorily-defined 'base' ").

The Court also finds the Department's fifth reason, its "exaction of use tax on raw materials" and its "voluntary remittance of use tax on telephone directories" distinctions, to be vacuous. The facts in *Morton* and the stipulated facts in this case plainly show that the taxpayers voluntarily remitted use tax on their purchases of raw materials, filed refund claims, and then had their claims denied by the Department. *Cf. Morton,* 819 N.E.2d at 914–15 *with supra* p. 2. Furthermore, the Department has offered no explanation as to why these distinctions have any bearing upon the nature of the transactions between API and RR Donnelley.

Finally, while the Department's sixth reason is factually correct, i.e., that *Morton* does not address the import of Indiana Code § 6–2.5–4–1(c)(1), it does not mean that the case is inapplicable. Indeed in *API I,* the Court explained that it found the holding of *Morton* to be instructive, not simply its facts. As such, the relevant inquiry was, and continues to be, whether the material facts demonstrate that the two conditions of Indiana Code § 6–2.5–3–2 were satisfied: namely, whether API acquired tangible personal property in a retail transaction; and, if so, whether API used, stored, or consumed that tangible personal property in Indiana. *(See API I,* slip op. at 12 (citation omitted).) Accordingly, the Court finds that the holding of *Morton* is applicable here, as it was in *API I.*

■ The Department's final two arguments, when condensed, seek to subject API to Indiana's use tax primarily because it contracted with a commercial printer (RR Donnelley). *(See, e.g.,* Resp't Br. at 6–9, 12–16.) The theory underlying these arguments, in essence, is that the transactions between API and RR Donnelley must have constituted retail transactions because both RR Donnelley and API executed the purported sales in the ordinary course of their commercial printing and publishing businesses. *(See* Hr'g Tr. at 9–10.) As explained in *API I,* however, that theory is flawed, as it simply equates the act of selling at retail to the status of a party. Indeed, in *API I* the Court explained that "a retail transaction will not be found to exist merely because one party is a manufacturer or a commercial printer; *rather, certain facts must be found to exist before that manufacturer or [ ] commercial printer statutorily qualifies as a retail merchant making a retail transaction."* *(API I,* slip op. at 10 (emphasis added) (citation omitted)).)

The Department has not attempted to demonstrate that a retail transaction occurred by reference to the facts in the API I Record; instead, it refers to thirteen Indiana statutes (eighteen when the subsections are counted), three regulations,

---

7. Indiana Code § 6–2.5–5–31, which provides a sales/use tax exemption on certain transactions involving the production of "free distribution newspapers," excludes telephone directories from the definition of a "free distribution newspaper." *See* IND.CODE ANN. § 6–2.5–5–31(b)–(d) (West 2003).

and a single information bulletin[8] to "counter [API's] argument that [RR] Donnelley's function was limited to being 'a contract service provider[,]' whose employees serviced the [telephone d]irectories into existence.'" (Resp't Reply Br. at 4 (quoting Pet'r Br. at 19).) As such, the Department's use of these authorities does little to advance its overall claim, as the existence of a retail transaction turns on the interplay of the facts, not on the status of the players. Because the Department has once again simply equated the act of selling/reselling at retail to the status of a party and not provided any factual support for its claim, the Court finds that it has not shown that RR Donnelley sold the telephone directories to API at retail.[9],[10]

## CONCLUSION

The Department asserts that it has presented new arguments in this case but, in distilling those arguments, the Court finds that they are nothing more than reiterations of the Department's arguments in *API I*. Accordingly, pursuant to the facts as stipulated to by the parties and the relevant law as codified at Indiana Code § 6–2.5–3–2, the Court holds that API's in-state use of its telephone directories, during the years at issue, were not subject to Indiana use tax. Therefore, the Department's final determination is REVERSED and the Department is ordered to refund to API the use taxes it paid during the years at issue.

8. More specifically, the Department cited to statutes that defined a "retail transaction," a "retail unitary transaction," and "use" and "storage" for purposes of Indiana's use tax. (*See* Resp't Br. at 4 (citing IND.CODE ANN. §§ 6–2.5–1–2, –3–1(a),(b) (2006)).) The Department has also cited to statutes and regulations related to use tax exemptions, use tax liability, and use tax presumptions. (*See* Resp't Br. at 5–6 (citing IND.CODE ANN. §§ 6–2.5–3–4, –6, –7 (2006); 45 IND. ADMIN. CODE 2.2–3–20, –21 (2006)).) In addition, the Department cited to several statutes and an information bulletin related to various aspects of the commercial printing business. (*See* Resp't Br. at 6–8, 17 (citing IND.CODE ANN §§ 6–2.5–1–10 –5–3, –5.1, –6, –31, –36 (2006); Ind. Dep't of Revenue, Information Bulletin No. 69 (Nov. 1, 2000)).) Finally, the Department cited to authorities related to the interplay of selling at retail and providing services. (*See* Resp't Br. at 11, 13 (citing A.I.C. § 6–2.5–4–1(c)(1)–(3); 45 IND. ADMIN. CODE 2.2–4–2(a) (2006)).)

9. The Court also notes that while the Department's auditors initially claimed that the transactions between API and RR Donnelley constituted retail unitary transactions, the Department's attorneys presented no additional argument (either written or orally) as to that claim. (*Cf., e.g.,* Jt. Stip. Facts ¶ 8, Ex. F at 3 *with* Resp't Br. at 3–18 *and* Hr'g Tr. at 3–19, 31–33.) Accordingly, the Court will not address the claim any further.

10. Finally, the Court notes that the Department has reasserted that it "cannot accept [API's] interpretation of [its] contract" with RR Donnelley because the "vesting of title to work" provisions should have been understood to mean the vesting of title to the directories. (*See* Hr'g Tr. at 13.) The Department's argument is misplaced, considering that it was this Court and not API that interpreted the meaning of those contract provisions; the Court stands by its previous interpretation in its entirety. (*See API I*, slip op. at 11 n. 10.)