ATTORNEYS FOR PETITIONER:
**JEROME L. WITHERED**
**ZACHARY T. WILLIAMS**
WITHERED BURNS LLP
Lafayette, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**WINSTON LIN**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

08/31/2017, 3:23 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| | |
|---|---|
| SCHILLI LEASING, INC., | ) |
| Petitioner, | ) |
| v. | ) Cause No. 49T10-1306-TA-00054 |
| INDIANA DEPARTMENT OF STATE REVENUE, | ) |
| Respondent. | ) |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA DEPARTMENT OF STATE REVENUE

**FOR PUBLICATION**
**August 31, 2017**

FISHER, Senior Judge

Schilli Leasing, Inc. has appealed the Indiana Department of State Revenue's final determination assessing it with unpaid sales and use tax liabilities for the 2008, 2009, and 2010 tax years (the years at issue). Schilli Leasing's appeal presents one issue for the Court to decide: whether the retail transactions giving rise to those unpaid liabilities were exempt from sales and use taxes under Indiana Code § 6-2.5-5-27, Indiana's public transportation exemption. Upon review, the Court finds that they were not exempt.

**FACTS AND PROCEDURAL HISTORY**

Schilli Leasing, located in Remington, Indiana, is a full-service truck leasing company owned by Thomas R. Schilli. (Jt. Stip. Facts ¶¶ 2-4; Pet'r Trial Ex. 1 at 3[1].) Schilli Leasing is in the business of acquiring vehicles that it then leases to third-parties, including four other companies owned by Mr. Schilli: Wabash Valley Transportation, Inc. ("WVT"); Schilli Specialized, Inc. ("SSI"); Schilli Specialized of Texas, Inc. ("SST"); and Midwest Shuttle Services, Inc. ("MSS"). (Jt. Stip. Facts ¶ 3; Trial Tr. at 21, 31, 41-42, 60; Pet'r Trial Ex. 4 at 2.) WVT, SSI, and SST "are companies [that] haul freight for hire." (Jt. Stip. Facts ¶ 6; Trial Tr. at 10-11.) MSS is a "freight preparation" company: common carriers hire MSS to load, tarp, and secure their customers' freight onto trailers and then move those trailers a short-distance for pick-up by the motor carriers. (See Jt. Stip. Facts ¶ 7; Trial Tr. at 12-13, 33-34.)

In conjunction with its leasing program, Schilli Leasing operates numerous garage facilities throughout the country where it provides maintenance and repair services for its vehicles. (See Trial Tr. at 11, 39-40, Pet'r Trial Ex. 1 at 3.) Schilli Leasing also provides WVT, SSI, and SST, and MSS with several services not available to its other lessees. For instance, it purchases all their fuel and it provides them with

---

[1] During trial, Schilli Leasing offered five exhibits as evidence. (See Trial Tr. at 4-5; Pet'r Trial Exs. 1-5.) The Court notes that each of those five exhibits had been previously filed in conjunction with the parties' joint stipulation of facts and designated as confidential. (Compare Pet'r Trial Exs. 1-5 with Jt. Stip. Facts, Exs. 1-5.) Because Schilli Leasing did not make provisions to maintain the confidentiality of those documents at trial, (compare Trial Tr. at 4-5 with Ind. Administrative Rule 9(G)(5)(a)(i)(b)), their confidentiality has been waived.

temporary freight storage services.[2] (See Trial Tr. at 17-18, 23-25, 55, 58.) Schilli Leasing also operates a "bunkhouse" at each of its garage facilities that provides overnight accommodations, showers, laundry facilities, and use of a "courtesy car" to the drivers of WVT, SSI, SST, and MSS while their vehicles are being serviced, while they are on federally-mandated rest periods, or while they are attending employment orientation/training. (Jt. Stip. Facts ¶ 4; Trial Tr. at 12, 22, 45-46, 55, 61.) While Schilli Leasing charges WVT, SSI, SST, and MSS for these services and accommodations, it appears that they do not involve an exchange of money per se but are reflected as "accounting allocations" in each company's respective financial records. (See Trial Tr. at 17-18, 21, 23-24, 33, 41-42, 58, 60-61.)

Although Schilli Leasing, WVT, SSI, SST, and MSS are all owned by the same individual, they are separate corporate entities.[3] (Trial Tr. at 29-30.) Mr. Schilli set up his companies in this fashion – as opposed to a singular corporation or a group of companies controlled by a holding company – so that each company could take advantage of the best insurance rates available to it as well as to put its management closer to its work force and finances. (Trial Tr. at 16-17.)

---

[2] For instance, if one of those companies damages the freight it is transporting, it brings the "salvage" to Schilli Leasing's facility in Remington for storage until its disposal. (Trial Tr. at 23-25, 55.) (See also Trial Tr. at 56 (indicating that Schilli Leasing sometimes stores the freight of those companies to protect it from extreme temperatures).)

[3] Mr. Schilli also owns two other companies: Schilli Distribution Services, Inc. ("SDS") and Schilli Transportation Services, Inc. ("STS"). (Jt. Stip. Facts ¶ 3.) SDS "is a warehousing and logistics business [that] handles and houses freight for hauling, and coordinates . . . work with [WVT, SSI, SST, and other] third-parties who deliver freight to SDS and who pick freight up from SDS facilities." (Jt. Stip. Facts ¶ 8.) STS not only brokers freight for WVT, SSI, and SST but also provides various administrative services (e.g., IT, human resources, and accounting) to all of the companies owned by Mr. Schilli. (Trial Tr. at 8-10.)

3

In 2012, after completing an audit, the Department determined that Schilli Leasing had been deficient in remitting sales and use taxes during the years at issue. (See Pet'r Trial Ex. 1 at 1-2.) Specifically, it found that Schilli Leasing failed to:

collect sales tax on its charges to MSS for vehicle lease payments, fuel, and repair parts;

collect sales tax on its charges to WVT, SSI, and SST[4] for vehicle lease payments, temporary freight storage, and bunkrooms;

remit use tax on its purchases of "bunkhouse improvements," including a water softener, as well as a forklift and a laser jet printer that were used in one of its repair shops;

remit use tax on its purchases of items used in its repair shops, such as uniforms, gloves, towels, toilet tissue, and sidewalk salt.

(Compare Pet'r Trial Ex. 1 with Pet'r Trial Exs. 4 at 5-9, 5 at 5-13 and Pet'r V. Pet. Set Aside Final Determination Indiana Dep't Revenue at ¶ 9.) As a result of these findings, the Department issued Proposed Assessments to Schilli Leasing totaling $223,041.48 for the years at issue. (See Pet'r Trial Ex. 2.)

Schilli Leasing protested the Proposed Assessments, claiming that the retail transactions identified by the Department in its audit and upon which the Proposed Assessments were based were exempt from taxation under the public transportation exemption. (Jt. Stip. Facts ¶¶ 12-13; Pet'r Trial Exs. 3, 4.) The Department conducted

---

[4] Based on the evidence before the Court, it is unclear whether Schilli Leasing billed WVT, SSI, and SST directly or if it billed STS. (Compare Pet'r Trial Ex. 4 at 6 with Pet'r Trial Ex. 5 at 7.)

a hearing and, on May 15, 2013, issued a Letter of Findings denying the protest.[5] (See Jt. Stip. Facts ¶ 14; Pet'r Trial Ex. 5.)

Schilli Leasing initiated an original tax appeal on June 4, 2013. The appeal proceeded to trial in November of 2016. The Court heard oral argument on January 25, 2017. Additional facts will be supplied when necessary.

## STANDARD OF REVIEW

This Court reviews final determinations of the Department de novo. See IND. CODE § 6-8.1-5-1(i) (2017). As a result, the Court is not bound by either the evidence or the issues presented to the Department at the administrative level. See Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue, 865 N.E.2d 725, 727 (Ind. Tax Ct. 2007), review denied.

## LAW

Indiana imposes both a sales tax and a use tax. The sales tax is imposed on retail transactions that occur in Indiana. See IND. CODE § 6-2.5-2-1(a) (2008). The use tax is imposed on the storage, use, or consumption of tangible personal property in Indiana if that property was acquired in a retail transaction, regardless of where that transaction occurred. IND. CODE § 6-2.5-3-2(a) (2008). The use tax is complementary to the sales tax because it is primarily designed to reach out-of-state sales of tangible personal property that are subsequently used in Indiana. Horseshoe Hammond, 865 N.E.2d at 727; Morton Bldgs., Inc. v. Indiana Dep't of State Revenue, 819 N.E.2d 913, 915 (Ind. Tax Ct. 2004), abrogated on other grounds. "This complementary formulation

---

[5] In its audit report, the Department found that certain transactions between Schilli Leasing and Shelton Wholesale Company were taxable. (See Pet'r Trial Ex. 1 at 6-7.) Schilli Leasing challenged the Department's findings and Department subsequently sustained Schilli Leasing's challenge. (Compare Pet'r Trial Ex. 4 at 7 with Pet'r Trial Ex. 5 at 10-12.) As a result, the taxability of those transactions is not at issue in this case.

exists to ensure that the Indiana sales tax may not be avoided by purchasing products in states where there is no sales tax or where there is a lower sales tax." Morton, 819 N.E.2d at 915 (citations omitted). "Accordingly, the use tax bites where the sales tax does not." Id. (citation omitted).

The Indiana legislature has enacted numerous statutes, however, that exempt certain retail transactions from taxation. See generally, e.g., IND. CODE § 6-2.5-5 (2008). One of those statutes, Indiana Code § 6-2.5-5-27, is at issue in this case; it states that "[t]ransactions involving tangible personal property and services are exempt from the [sales] tax, if the person acquiring the property or service directly uses or consumes it in providing public transportation for persons or property." IND. CODE § 6-2.5-5-27 (2008) (amended 2013). See also IND. CODE § 6-2.5-3-4(a)(2) (2008) (making the exemption applicable to the use tax). For purposes of this exemption, the Department has defined "public transportation" as "the movement, transportation, or carrying of persons and/or property for consideration by a common carrier, contract carrier, household goods carrier, carriers of exempt commodities, and other specialized carriers performing public transportation service for compensation by highway, rail, air, or water[.]" 45 IND. ADMIN. CODE 2.2-5-61(b) (2008).

## ANALYSIS

In litigating its appeal, Schilli Leasing has stipulated to the fact that "[it] does not transport property owned by third-parties for consideration." (Jt. Stip. Facts ¶ 5.) (See also Trial Tr. at 30, 59-60.) Thus, because Schilli Leasing does not provide public transportation, the underlying retail transactions at issue do not qualify for the public

6

transportation exemption.[6]    See I.C. § 6-2.5-5-27; 45 I.A.C. 2.2-5-61(b).  Nonetheless, Schilli Leasing contends that it does not owe any sales or use tax on the transactions identified by the Department's audit because its "business activities fall squarely with[in] the express language of the public transportation exemption statute[.]"  (See, e.g., Pet'r Corrected Post-Trial Br. ("Pet'r Br.") at 10 (emphasis omitted).)   Schilli Leasing has advanced two arguments in support of its contention.

1.

First, Schilli Leasing argues that Indiana Code § 6-2.5-5-27 simply applies to all "transportation-related transactions" and thus, to the extent it has shown that "everything" it does is related to the transportation industry and the ultimate transport of freight, the transactions at issue are exempt.  (See Pet'r Br. at 8-10; Pet'r Reply Br. at 1-2.)  (See also Pet'r Br. at 12-19 (maintaining that because its leasing of trucks, its repair of trucks, and its provision of rest accommodations to truck drivers are "directed to the ultimate movement of freight," they are "necessary and integral" parts of the

_____

[6] With respect to those transactions where Schilli Leasing sold goods or services to WVT, SSI, SST, and MSS, its obligation to collect sales tax was contingent upon whether the purchasers provided public transportation, not whether it provided public transportation.  See, e.g., IND. CODE §§ 6-2.5-2-1(b), 5-27 (2008).  While Schilli Leasing made general claims that the vehicles it leases to WVT, SSI, and SST "are used exclusively for the hauling of freight in the transportation industry" and that the services performed by MSS "are part of the transportation process," (see, e.g., Pet'r V. Pet. Set Aside Final Determination Indiana Dep't Revenue at ¶ 9(B); Pet'r Corrected Post-Trial Br. ("Pet'r Br.") at 2, 6, 14-15; Pet'r Reply Br. at 3), those statements do not demonstrate to the Court that those entities are in fact exempt.  See, e.g., Carnahan Grain, Inc. v. Indiana Dep't of State Revenue, 828 N.E.2d 465, 467 (Ind. Tax Ct. 2005) (stating that in order to be entitled to the public transportation exemption, it must be shown that an entity is predominantly engaged in transporting the property of another, rather than its own property); Indiana Waste Sys. Ind., Inc. v. Indiana Dep't of State Revenue, 644 N.E.2d 960, 961-62 (Ind. Tax Ct. 1994) (discussing methodologies for demonstrating how an entity is predominately engaged in transporting the property of another versus its own).  See also, e.g., Galligan v. Indiana Dep't of State Revenue, 825 N.E.2d 467, 483-84 (Ind. Tax Ct. 2005) (explaining that there is no better way to prove entitlement to an exemption than to provide copies of the exemption certificate that were to be provided to the retail merchant at the point of sale), review denied; IND. CODE § 6-2.5-8-8 (2008) (amended 2015) (outlining presentation of exemption certificates).

transportation process); Trial Tr. at 27 (stating, for example, that Schilli Leasing's repair services "support the maintenance of the truck, and if you don't maintain the truck, the truck doesn't move, [and] transportation doesn't happen").) Schilli Leasing's argument is premised on its belief that the Department's regulation defining public transportation is invalid because it "impermissibly narrows" the application of the exemption statute by requiring a taxpayer to actually haul freight to be considered "providing public transportation." (See, e.g., Pet'r Br. at 8-10, 19-21; Pet'r Reply Br. at 1-3 (contending that public transportation is a process comprised of a "bundle of services," the hauling of freight of which is just one).) The Court does not find Schilli Leasing's argument persuasive.

The plain language of the public transportation exemption necessarily links the person who acquired property to the use or consumption of it in his provision of public transportation. I.C. § 6-2.5-5-27. See also, e.g., Wendt LLP v. Indiana Dep't of State Revenue, 977 N.E.2d 480, 484 (Ind. Tax Ct. 2012) (stating that while the public transportation exemption applies broadly, its application is nonetheless confined to that property "used within a taxpayer's continuous process of furnishing public transportation" (emphasis added)); DeKalb Cnty. E. Cmty. Sch. Dist. v. Dep't of Local Gov't Fin., 930 N.E.2d 1257, 1260 (Ind. Tax Ct. 2010) (explaining that the Court will not read a statute in such a way that results in an absurdity). The Department's definition of public transportation in 45 I.A.C. 2.2-5-61(b) is therefore consistent with, and does not impermissibly narrow, the scope of Indiana Code § 6-2.5-5-27. Schilli Leasing's Proposed Assessments will therefore not be reversed on this basis.

2.

In the alternative, Schilli Leasing explains that while each of the Schilli companies is a separate corporate entity, they are "interdependent," relying on each other "to succeed and exist." (Pet'r Br. at 29.) Schilli Leasing posits that the Court should therefore disregard the separate corporate existence of each of the Schilli companies and treat them instead "as a single diverse ground transportation company" whose "inter-company transactions" qualify for the public transportation exemption. (See Pet'r Br at 4-5, 29.) (See also Trial Tr. at 15-17, 20, 27-30; Pet'r Trial Ex. 4 at 1-2.) As support for its position, Schilli Leasing relies entirely upon the "unitary business principle." (See Pet'r Br. at 24-29.)

Under the unitary business principle, affiliated corporate entities may be taxed as a unitary business when they are functionally integrated, centrally managed, and benefit from economies of scale. See, e.g., Allied Signal, Inc. v. Dir., Div. of Taxation, 504 U.S. 768, 781 (1992); Container Corp. of Am. v. Franchise Tax Bd., 463 U.S. 159, 180 n.19 (1983); Exxon Corp. v. Wisconsin Dep't of Revenue, 447 U.S. 207, 224 (1980). The Court need not engage in the exercise of determining whether the Schilli companies constitute a unitary business, however, because the unitary business principle is a corporate income tax concept that has no application in the sales and use tax arena. Indeed, the United States Supreme Court has declared the unitary business principle as the "linchpin of apportionability in the field of state income taxation[.]" Mobil Oil Corp. v. Comm'r of Taxes of Vermont, 445 U.S. 425, 439 (1980). Moreover, apportionment does not play a role in the imposition and collection of sales and use taxes. See, e.g., Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 186 (1995) (stating that

9

"[a] sale of goods is most readily viewed as a discrete event facilitated by the laws and amenities of the place of sale, and the transaction itself does not readily reveal the extent to which completed or anticipated interstate activity affects the value on which a buyer is taxed").) (See also Trial Tr. at 67-68, 83 (where Schilli Leasing acknowledges that the unitary business principle has not, through any statute, administrative regulation, or case law, been applied in the context of sales and use taxes).)[7] Consequently, Schilli Leasing's Proposed Assessments will not be reversed on this basis either.

## CONCLUSION

For all the reasons stated above, the Court AFFIRMS the Department's final

---

[7] In its brief, Schilli Leasing refers the Court to a 2012 opinion in which the Michigan Court of Appeals held that the unitary business principle applied to Michigan's single business tax, a "value-added" tax. Schilli Leasing contends that based on the following language from that case, "[t]here is no legitimate reason why the unitary business principle cannot be applied to Indiana's sales and use tax[:]"

> While the unitary business principle is frequently applied to test the constitutionality of the apportionment of income-based taxes, no case has held that the unitary business principle is only applicable to income-based taxes; nor would such a holding reasonably follow from the line of cases applying the unitary business principle.

(Pet'r Br. at 28 (quoting Reynolds Metals Co., LLC v. Dep't of Treasury, No. 300001, 2012 WL 954278, at *5 (Mich. Ct. App. March 20, 2012)).) The case goes on to say, however, that

> apportionment is necessary in order to determine both income-based and value-added tax liability when dealing with interstate businesses. Therefore, we conclude that the unitary business principle applies to value-added taxes, such as [Michigan's single business tax], because the underlying realities of both income-based and value-added taxes require apportionment[.]

Reynolds Metals, 2012 WL 954278, at *5.

10

determination.[8]

_____

[8]   Alternatively, Schilli Leasing has asked the Court to reverse the Proposed Assessments because they are based on the Department's "faulty use of statistical sampling" during the audit. (See, e.g., Pet'r Br. at 29.)  The only evidence presented with respect to this issue was the trial testimony of Schilling Leasing's accountant that "we had a problem" with the fact that the statistical sample used 1) invoiced accounts receivable which included intercompany transfers and 2) total fuel sales which included the use of out-of-state fuel, which presumably created a "base number that . . . was too high."  (Compare Trial Tr. at 79-80 with Pet'r Br. at 29 and Pet'r Reply Br. at 6.)  From this testimony, it is impossible to ascertain how or why the Department's audit sample was "faulty."  Accordingly, the Court declines Schilli Leasing's invitation to reverse the Proposed Assessments on this basis.